PETER C. ANDERSON
UNITED STATES TRUSTEE
MICHAEL JONES, SBN 271574
ASSISTANT UNITED STATES TRUSTEE
DAVID S. SHEVITZ, SBN 271917
TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
915 Wilshire Boulevard, Suite 1850
Los Angeles, California 90017
Telephone: (213) 894-3240
Email: David.S.Shevitz@usdoj.gov
Attorneys for Peter C. Anderson
United States Trustee for Region 16

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re **ROSLAND CAPITAL LLC,**<br><br>*Debtor and Debtor in Possession.* | Case No. 2:26-bk-16650-BB<br><br>Chapter 11<br><br>**OBJECTION AND OPPOSITION OF THE UNITED STATES TRUSTEE TO DEBTOR'S MOTION FOR AN ORDER: (1) AUTHORIZING DEBTOR TO REDACT OR WITHHOLD CERTAIN CONFIDENTIAL INFORMATION OF CUSTOMERS AND PERSONAL INFORMATION OF INDIVIDUALS; (2) AUTHORIZING THE DEBTOR'S NOTICING AGENT TO SERVE THE CASE COMMENCEMENT NOTICE; AND (3) AUTHORIZING THE DEBTOR TO LIMIT THE SCOPE OF NOTICE [DOCKET NO. 3]**<br><br>Hearing:<br><br>Date: July 7, 2026<br>Time: 2:00 p.m.<br>Place: Courtroom 1539<br>255 E. Temple Street<br>Los Angeles, California 90012<br>(or via ZoomGov per posted procedures) |

1

Peter C. Anderson, the United States Trustee for Region 16 (the "U.S. Trustee"), by and through his undersigned counsel, hereby files this preliminary objection (the "Objection") to the *Debtor's Motion for an Order: (1) Authorizing Debtor to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals; (2) Authorizing the Debtor's Noticing Agent to Serve the Case Commencement Notice; (3) Authorizing the Debtor to Limit the Scope of Notice* [Docket No. 3] (the "Motion") filed by Rosland Capital LLC (the "Debtor"). In support of his Objection, the U.S. Trustee respectfully represents as follows:

**I.**

**INTRODUCTION**

1.      Congress made bankruptcy a public process. Section 107(a) of the Bankruptcy Code provides that, with narrow exceptions, "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). The Ninth Circuit has emphasized the strong presumption of public access to bankruptcy filings. *See In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999); *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417 (9th Cir. 2011).

2.      The Debtor asks for truly extraordinary relief from this Court, on an emergency basis, with five days' notice served on only its twenty largest creditors and the U.S. Trustee, before any schedules or statements have been filed, before the meeting of creditors, and before the U.S. Trustee has had any opportunity to solicit and appoint an official committee of unsecured creditors. In other words, the Debtor wishes to eliminate notice to creditors that have never even been given notice in the first place, which would be a severe problem.  The Debtor's requested relief is to *permanently* erase the identities of approximately 617 of the approximately 650 creditors on its own mailing matrix from every paper that will ever be filed in this case. Those creditors are not

2

incidental parties. According to the Debtor's own First Day Declaration, they are customers who paid the Debtor approximately $49 million for precious metals that were never delivered, or who delivered metals to the Debtor for a repurchase price of approximately $11.8 million that was never paid. Declaration of Michael Hogan [Docket No. 5] ("Hogan Decl.") ¶¶ 25–26, 45, 51. In other words, the creditors whose names the Debtor proposes to conceal *are* this case.

3.      The Motion is overbroad, premature, and unsupported by evidence. It seeks permanent relief on a first-day record consisting of a single conclusory declaration from the Debtor's newly retained Chief Restructuring Officer. It rests on out-of-circuit, trial-level rulings, principally from Delaware and New York, that were entered on developed evidentiary records, with the support or participation of an appointed creditors' committee, and that granted materially narrower relief than the Debtor requests here. Further, the Motion couples the redaction request with a sweeping limitation-of-notice regime that exceeds what Federal Rule of Bankruptcy Procedure 2002(i) permits, particularly where no committee has been appointed.

4.      The U.S. Trustee does not seek to force the wholesale publication of sensitive personal information of natural persons. Consistent with section 107(c) and the U.S. Trustee's ordinary practice, the U.S. Trustee would not oppose narrowly tailored *interim* relief permitting the Debtor to redact customer identities, including the home addresses, email addresses, telephone numbers, and account numbers of customers who are natural persons, until such time as the Motion can be addressed at a fully noticed and briefed final hearing. The U.S. Trustee likewise does not oppose the Debtor's noticing agent serving the case commencement notice and other required notices, provided that the Debtor and its noticing agent deliver to the U.S. Trustee, upon request, a complete and unredacted mailing list. But the Debtor's request to seal creditor *names* permanently, case-wide, and on day one, should be denied. The request to limit notice should

likewise be denied, or at most granted only in the narrow form permitted by Rule 2002(i) after a committee is appointed.

5.      Finally, any relief the Court grants should be expressly interim, should be conditioned on the protections set forth in Part III.H below, and any order should provide that the Motion "is granted on an interim basis as set forth in this order." Moreover, the Court should not set a hearing on final approval of the Motion until the Debtor has completed its filings, including its schedules and statement of financial affairs. Once those documents are filed, the Court should set a briefing schedule for the final hearing, and in no event should oppositions be due fewer than 15 days after the Debtor's filings are complete.

## II.

### FACTUAL BACKGROUND

**A.  General Case Background**

6.      On July 2, 2026 (the "Petition Date"), the Debtor commenced this voluntary case under chapter 11 of the Bankruptcy Code. See Docket No. 1. The Debtor remains a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

7.      The Debtor marketed and sold gold, silver, platinum, and other precious metals to retail consumers throughout the United States, including precious metals for metal-backed individual retirement accounts. Hogan Decl. ¶¶ 12, 16. The Debtor has ceased operations: it terminated all employees as of June 19, 2026 (retaining two on a consulting basis), no longer possesses any inventory of precious metals, and has limited funds in its accounts. Hogan Decl. ¶¶ 34–35.

8.      According to the First Day Declaration, the Debtor's principal remaining assets are certain insurance policies and its "Customer Information Assets"; these Customer Information

Assets consist of customer lists, customer relationship information, customer data, and marketing records concerning approximately 35,000 customers and more than 65,000 potential customers. Hogan Decl. ¶¶ 35, 45. The Debtor intends to promptly file a motion to approve bidding procedures for an auction of the Customer Information Assets, and thereafter a liquidating plan creating a liquidating trust. Hogan Decl. ¶¶ 41, 45.

9.      As of the Petition Date, approximately 484 customers are owed approximately $49 million in "Deferred Revenue" (funds paid for products never shipped), and approximately 133 customers are owed approximately $11.8 million on the "Buy Back List" (metals delivered to the Debtor for repurchase but never paid for). Hogan Decl. ¶¶ 25–26, 45. These approximately 617 customer-creditors comprise the overwhelming majority of the approximately 650 parties on the Debtor's creditor matrix. Hogan Decl. ¶ 51. The Debtor has no secured creditors. See Notice of Filing of, and Hearings on Emergency "First Day" Motions [Docket No. 6] at 2.

10.     The Debtor is the subject of an investigation by the office of the New York Attorney General concerning its product sales, and an investigation by the United States Securities and Exchange Commission in connection with its metal-backed IRA products. Hogan Decl. ¶¶ 28–29. As of June 27, 2026, approximately 470 customers had submitted voicemails, emails, or demands through the Debtor's compliance department seeking the return of funds or delivery of products. Hogan Decl. ¶ 27.

11.     The Debtor has not yet filed its schedules of assets and liabilities or statement of financial affairs. The meeting of creditors under 11 U.S.C. § 341(a) has not yet been held. The U.S. Trustee has not yet had an opportunity to solicit creditors to form an official committee of unsecured creditors under 11 U.S.C. § 1102.

**B.  The Debtor's Pre-Authorization Self-Help**

5

12.    The Debtor did not await a ruling on the Motion before withholding creditor identities from its filings. By its own account, the List of Creditors Holding the 20 Largest Unsecured Claims and the Master Mailing List of Creditors that the Debtor filed with its petition "contain[] only the names of non-customer creditors." Hogan Decl. ¶ 54. Federal Rule of Bankruptcy Procedure 1007(a)(1) and (d) required the Debtor to file, with the petition, a complete list of creditors and a list of its twenty largest unsecured claims on Official Form 204, which calls for creditors' names and addresses. The publicly filed "top 20" list is therefore not, in fact, a list of the Debtor's twenty largest unsecured creditors, and the filed matrix omits roughly ninety-five percent of the creditor body. The Motion thus seeks retroactive approval of redactions the Debtor has already made unilaterally.

### C. The Motion

13.    The Motion seeks three categories of relief. *First*, the Debtor seeks authority under sections 107(b)(1) and 107(c)(1) to redact "the names of the Debtor's customers, and all associated identifying information, from any documents publicly filed in this case, including without limitation the creditors matrix, schedules, and statements," and, as to customers who are natural persons, to do so permanently. Motion at 5, 9–12. *Second*, the Debtor asks that its proposed noticing agent, BMC Group, Inc., rather than the Clerk of the Court, serve the notice of case commencement, so that no publicly filed certificate of service will identify the parties served. Motion at 12–13. *Third*, the Debtor asks the Court to limit notice of nine enumerated categories of matters to a "Limited Service List" consisting of the U.S. Trustee, the twenty largest unsecured creditors, committee counsel (if any), parties requesting notice under Rule 2002(i), and "any party with a pecuniary interest in the subject matter of the particular Limited Notice Matter"; the enumerated categories include sales and use of property under section 363, cash collateral and

financing matters, compromises under Rule 9019, abandonment, assumption and rejection of contracts, claim objections, employment applications, compensation applications, and a catch-all for "any other contested matters." Motion at 13–14.

14.    The Motion's carve-outs from limited notice extend only to the case commencement notice, the bar date, hearings on dismissal or conversion, and matters the Court orders noticed. Motion at 14. The Motion was served only on the Limited Service List, i.e., the twenty largest creditors and the U.S. Trustee. Motion at 15; Docket No. 6 at 2.

### III.

### OBJECTION

**A.  Section 107(a)'s Presumption of Public Access Governs, and the Debtor Bears a Heavy Burden to Overcome It**

15.    Section 107(a) codifies the public's right of access to papers filed in a bankruptcy case. The exceptions in sections 107(b) and 107(c) are just that, exceptions, and the party seeking to invoke them bears the burden of proving that the specific information at issue actually falls within a protected category and that the relief sought is narrowly tailored to the protected interest. *See In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417 (9th Cir. 2011); *In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999) (public access "fosters confidence among creditors regarding the fairness of the bankruptcy system"). Broad allegations of harm, without specific examples and articulated reasoning supported by evidence, are insufficient.

16.    Transparency is not an abstraction here. Public identification of creditors is what permits the U.S. Trustee to solicit and appoint a committee under section 1102, permits creditors to identify and communicate with one another, permits the claims process to function, and permits

7

the public, including the regulators actively investigating this Debtor, to monitor the case. A chapter 11 case in which the identity of ninety-five percent of the creditor body is a secret is not an open case and is an afront to the public nature of bankruptcy proceedings.

### B.  The Debtor Has Not Carried Its Burden Under Section 107(b)(1)

17.     The Debtor invokes section 107(b)(1), which protects "a trade secret or confidential research, development, or commercial information." But even accepting that the Debtor's customer database[1] may constitute confidential commercial information as an asset, it does not follow that the *names of the Debtor's creditors on its matrix and schedules* are themselves protected. The document the Bankruptcy Code requires the Debtor to file is a list of creditors, not the customer database. The appearance of approximately 617 creditor names on a mailing matrix, less than two-thirds of one percent of the approximately 100,000 records comprising the Customer Information Assets, does not disclose purchase histories, transaction data, marketing records, or the database itself, and the Debtor offers no evidence that it would materially impair the value of the asset it intends to auction.

18.     The Debtor's evidentiary showing consists of a few conclusory paragraphs of its CRO's declaration asserting that the value of the Customer Information Assets "derives almost entirely" from secrecy and that competitors would "poach" customers. Hogan Decl. ¶¶ 48–49. There is no testimony from an investment banker or marketing professional, no evidence of what a purchaser would pay with or without the redactions, no evidence of the measures the Debtor took to keep its customer identities secret while in operation, and no evidence that any competitor could or would reconstruct a valuable marketing asset from a bare list of names of people with claims

---

[1] The customer database is a compilation of approximately 100,000 names, contact details, purchase histories, and marketing records, Hogan Decl. ¶ 45

against a failed dealer. That showing would not satisfy section 107(b)(1) at a final hearing, much less justify permanent case-wide relief on an emergency motion.

19.     The contrast with the authority on which the Debtor principally relies is instructive. In *FTX*, the bankruptcy court granted redaction of customer names under section 107(b)(1) only for successive 90-day periods, only after an evidentiary hearing, and only on the strength of uncontroverted testimony from the debtors' investment banker (concerning the value of the customer base to an ongoing sale and reorganization process) and a cybersecurity expert. The district court affirmed expressly because that record was "uncontroverted." *In re FTX Trading Ltd.*, No. 22-11068 (JTD), 2024 WL 4948827 (D. Del. Dec. 3, 2024). Here there is no evidentiary record at all, and the Debtor seeks *more* relief than the FTX court granted on day one, without the committee support that existed in FTX.

**C.  The Request for Permanent Redaction Under Section 107(c) Is Unsupported and Premature**

20.     Section 107(c)(1) permits, but does not require, the Court, "for cause," to protect an individual's means of identification "to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury." 11 U.S.C. § 107(c)(1). The provision is discretionary, requires a finding of cause, and requires identification of a specific potential harm. *See In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 751 (D. Del. 2018).

21.     The Debtor identifies no risk specific to its own customers. Its showing consists of borrowed evidence: testimony from the *FTX* record describing phishing and business-email-compromise schemes that targeted customers of *Celsius Network* (a cryptocurrency platform) after their names were published. Motion at 10–11. Cryptocurrency cases present a distinct risk profile:

9

customers hold online accounts secured by credentials that can be phished, assets that can be transferred irreversibly and anonymously, and a demonstrated ecosystem of criminals targeting them. The Debtor's customers bought physical gold and silver coins from a company that has now ceased operating. The Debtor offers no expert testimony, and no evidence at all, that the appearance of a name on a creditor matrix in this case creates an "undue risk of identity theft or other unlawful injury" to anyone.

22.    Notably, even in the cryptocurrency context, the bankruptcy court in *Celsius* itself refused to seal the names of individual customers, holding that names alone, once home and email addresses were redacted, did not create the risk section 107(c) addresses, and that creditors may not participate in a bankruptcy case anonymously, including by filing anonymous proofs of claim. *In re Celsius Network LLC*, 644 B.R. 276 (Bankr. S.D.N.Y. 2022). That is the appropriate framework here: the U.S. Trustee does not oppose interim redaction of customer identities pending a fully noticed and briefed final hearing, but on a final basis the names of the creditors of this estate should remain public.

23.    The Debtor's professed solicitude for its customers' privacy is also difficult to reconcile with its stated intention to auction those same customers' names, addresses, and purchasing histories to "participants in the precious metals industry, direct marketing companies, customer acquisition platforms, financial services businesses, lead generation companies, and other strategic purchasers." Hogan Decl. ¶ 46. The Motion does not seek to protect customers from unwanted solicitation; it seeks to preserve the Debtor's exclusive ability to sell the right to solicit them. Whatever the merits of that commercial objective under section 107(b), it is not "cause" to protect individuals under section 107(c).

24.     All things considered, *permanent* relief on a first-day motion is inappropriate. Permanent redaction should not be considered until the Debtor has filed its schedules and statements, the section 341(a) meeting has been held, a committee has been solicited and appointed and heard from, and the Court can test the Debtor's asserted justifications on a real evidentiary record at a properly noticed final hearing. Temporary, narrowly tailored interim protection preserves the status quo; permanent first-day relief forecloses it.

**D.  The Out-of-Circuit Trial-Level Orders the Debtor Cites Do Not Control and Are Distinguishable**

25.     The Debtor's authorities, specifically, *FTX*, *Genesis*, *Lear Capital*, and related orders, are trial-level decisions from other circuits. None binds this Court, and each is materially distinguishable. *FTX* is discussed *supra*: interim 90-day relief, committee support, and an uncontroverted expert record. *Genesis* likewise involved a marketed sale process with record evidence that release of the list would decrease sale proceeds. *In re Genesis Global Holdco, LLC*, 652 B.R. 618 (Bankr. S.D.N.Y. 2023). The *Lear Capital* order was an unopposed first-day order in the District of Delaware, not a reasoned decision, and carries virtually no persuasive weight. To the extent these decisions are read to permit a debtor to conceal the identity of substantially its entire creditor body, on no evidence, permanently, and on a few days' notice, the U.S. Trustee respectfully submits they are inconsistent with section 107, with Ninth Circuit law narrowly construing exceptions to public access, and with the structure of chapter 11 itself.

**E.  Concealing Creditor Identities Would Impair the Administration of This Case**

26.     The redaction the Debtor proposes is not merely a matter of public curiosity; it collides with the machinery of chapter 11 at every stage:

27.    ***Committee formation.*** The U.S. Trustee must solicit unsecured creditors, beginning with the largest, to form an official committee under section 1102. The Debtor's publicly filed "top 20" list omits every one of its twenty largest creditors, all of whom are customers. While the Debtor has committed to provide unredacted lists to the U.S. Trustee, committee solicitation, appointment, and service on public notice lists cannot proceed on a fully anonymous basis, and creditors deciding whether to serve are entitled to know who else is in the case. If an individual creditor serves on a committee, at minimum that member's name will be disclosed.

28.    ***Claims administration.*** Official Form 410 requires a proof of claim to disclose the creditor's name and contact information, and Rule 3001(a) requires claims to conform substantially to the Official Form. Anonymous proofs of claim cannot be administered, objected to, or allowed, and the claims register is a public record. *See In re Celsius Network LLC*, 644 B.R. 276 (Bankr. S.D.N.Y. 2022).

29.    ***Plan solicitation and voting.*** The Debtor intends to propose a liquidating plan. Hogan Decl. ¶ 41. Classification, solicitation, voting, and confirmation under sections 1125 and 1126 presuppose identifiable creditors, and the tabulation of votes and treatment of claims must be transparent to parties in interest.

30.    ***Schedules and statements.*** Rule 1007 and the Official Forms require the Debtor to disclose creditors' names and addresses in its schedules and statement of financial affairs. The Debtor's request would work a case-long exemption from those requirements, requirements the Debtor has already violated by filing a redacted matrix and an incomplete "top 20" list without authorization.

31.    ***The anticipated sale process itself.*** The Debtor proposes to sell personally identifiable information about individuals, the very transaction addressed by section 363(b)(1)(B) of the Bankruptcy Code, which may require the appointment of a consumer privacy ombudsman under section 332 depending on the Debtor's privacy policies. The customer-creditors whose information is to be sold must be identifiable and able to be heard in connection with that process; a case structure in which they are anonymous and receive only limited notice is incompatible with the protections Congress built around sales of consumer data.

**F.  The Request to Limit Notice Exceeds Rule 2002(i) and Is Premature**

32.    Rule 2002(a) requires that specified notices be served on *all* creditors. *See* Fed. R. Bankr. P. 2002(a); *In re SoCalDeal, Inc.*, 2021 WL 3702206, at *1 (Bankr. C.D. Cal. Aug. 19, 2021). Rule 2002(i), the principal authority the Debtor invokes, permits the Court to limit notice only of the matters described in Rules 2002(a)(2) (sales), 2002(a)(3) (compromises), and 2002(a)(6) (compensation applications), and then only by directing that such notices be transmitted to the U.S. Trustee and mailed to the *committees appointed under section 1102* and to creditors who request notice. No committee has been appointed here, and indeed, none can be until the U.S. Trustee can solicit the very creditors the Debtor proposes to conceal.[2] Section 105(a) does not supply authority the rules withhold.

33.    The Debtor's proposed "Limited Notice Matters" sweep far beyond Rules 2002(a)(2), (3), and (6). They include cash collateral and financing matters, abandonment, assumption and rejection of contracts, claim objections, employment applications, and a catch-all

---

[2] The U.S. Trustee has received an unredacted top 20 creditor list, but was also advised by the Debtor's counsel that the list had changed since the case was filed.  Without access to the original list, the U.S. Trustee is without any basis to know what changes were made or why they were made.

extending to "any other contested matters, requests for relief, pleadings, or papers in this case." Motion at 13–14. Worse, the proposal leaves it to the Debtor to decide, matter by matter, which creditors have "a pecuniary interest in the subject matter" and are therefore entitled to notice. A regime in which the Debtor is both the party seeking relief and the arbiter of who learns about it is not consistent with due process.

34.     The proposed carve-outs are also underinclusive. They omit, among other things, notice of the section 341(a) meeting (Rule 2002(a)(1)), notice of the time to file objections to and the hearing on approval of a disclosure statement (Rule 2002(b)), notice of the time to accept or reject a proposed plan and the confirmation hearing (Rules 2002(b) and 3017(d)), and notice of plan modifications (Rule 2002(a)(5)). These are remarkable omissions in a case whose stated purpose is confirmation of a liquidating plan. Similarly, while the Debtor excepts a sale of substantially all assets from its limited-notice list, all creditors should also receive notice of the anticipated motion to approve bidding procedures for the auction of the Customer Information Assets, perhaps the most important event in this case, and one in which every customer-creditor has an obvious and direct interest.

35.     Nor is there any demonstrated burden justifying this relief. The matrix contains approximately 650 parties. Motion at 13. Noticing 650 parties by first-class mail is routine in this District and costs a few hundred dollars per notice event. This is a trivial expense in a case with tens of millions of dollars in claims, and one wholly disproportionate to the due-process rights the Debtor asks the Court to curtail. If, after a committee is appointed, the Debtor believes specific forthcoming motions warrant limited notice, it can identify those motions and seek appropriately tailored relief at that time.

**G.  There Is No Emergency Warranting Final Relief, and Any Relief Should Be Interim Only**

36.    The Debtor seeks emergency relief under Local Bankruptcy Rule 9075-1(a), but it has not carried its burden to show that permanent, case-wide relief must be granted on five days' notice to twenty creditors, with all other parties in interest relegated to raising opposition "orally at the Hearing." Docket No. 6 at 2. The only relief for which any urgency has been shown is narrow: interim protection of customer identities pending a final hearing, and service of the case commencement notice in a manner that does not place customer names on the public docket. The U.S. Trustee does not object to relief of that limited scope, on the conditions below. Everything else, the permanent redaction, redaction of entity creditors, and the limitation-of-notice regime, should await a fully noticed and briefed final hearing on a proper record. The Court should not set that final hearing now: the Debtor has filed only a skeletal petition, and the parties and the Court know very little about this case. The final hearing should be set only after the Debtor has completed its filings, including its schedules and statement of financial affairs. Once those documents are on file, the Court should set a briefing schedule for the final Motion, and in no event should oppositions be required fewer than 15 days after the Debtor's filings are complete.

**H.  Conditions That Should Accompany Any Interim Relief**

37.    If the Court is inclined to grant interim relief, the U.S. Trustee respectfully requests that any order include, at minimum, the following provisions: (a) the Debtor shall promptly file under seal with the Court complete, unredacted versions of the creditor matrix, the list of twenty largest unsecured creditors, and, when filed, the schedules and statement of financial affairs, and shall contemporaneously deliver unredacted versions to the U.S. Trustee and to counsel for any official committee upon appointment; (b) any redaction shall be limited, on an interim basis, to the

15

names and identifying information of customers pending the final hearing, and as to information other than names, to the home addresses, email addresses, telephone numbers, and account numbers of natural persons; (c) the Debtor's noticing agent shall serve all required notices on all creditors at their actual, unredacted addresses, and shall file certificates of service in redacted form publicly while providing unredacted certificates of service under seal to the Court and to the U.S. Trustee, and the Debtor and its noticing agent shall deliver to the U.S. Trustee, upon request, a complete and unredacted mailing list of all creditors and parties in interest; (d) all creditors shall receive notice of, without limitation, the case commencement, the section 341(a) meeting, the bar date, any proposed sale of or bidding procedures for the Customer Information Assets or substantially all assets, any disclosure statement and plan confirmation deadlines and hearings, any proposed dismissal or conversion, and any motion to appoint a trustee or examiner; (e) the interim relief shall remain in effect only until the Court determines the Motion on a final basis following a fully noticed and briefed final hearing; the final hearing shall not be set until the Debtor has completed its filings, including its schedules and statement of financial affairs, and once those documents are filed the Court should set a briefing schedule under which oppositions to final relief shall be due no fewer than 15 days after the Debtor's filings are complete, with the Debtor bearing the burden of proof at the final hearing; (f) the order shall be without prejudice to the rights of the U.S. Trustee, any committee, any creditor, or any other party in interest to seek to unseal any information or to oppose final relief; and (g) the order shall provide that the Motion "is granted on an interim basis as set forth in this order."

///

///

///

**IV.**

**CONCLUSION**

38.    For the foregoing reasons, the U.S. Trustee respectfully requests that the Court deny the Motion except to the limited extent, and on the conditions, described above, and grant such other relief as is just. The U.S. Trustee reserves all rights, including the right to supplement this Objection, to raise additional issues at or before the hearing, to object to final approval of any relief granted on an interim basis, and to be heard on any proposed form of order.

Dated: July 6, 2026

Respectfully submitted,

PETER C. ANDERSON
UNITED STATES TRUSTEE

By: /s/ David S. Shevitz
Trial Attorney

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

915 Wilshire Blvd. Suite 1850, Los Angeles CA 90017.

A true and correct copy of the foregoing document entitled (*specify*): **OBJECTION AND OPPOSITION OF THE UNITED STATES TRUSTEE TO DEBTOR'S MOTION FOR AN ORDER: (1) AUTHORIZING DEBTOR TO REDACT OR WITHHOLD CERTAIN CONFIDENTIAL INFORMATION OF CUSTOMERS AND PERSONAL INFORMATION OF INDIVIDUALS; (2) AUTHORIZING THE DEBTOR'S NOTICING AGENT TO SERVE THE CASE COMMENCEMENT NOTICE; AND (3) AUTHORIZING THE DEBTOR TO LIMIT THE SCOPE OF NOTICE [DOCKET NO. 3]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 1-7/6/2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 7/6/2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/6/2026 | David S. Shevitz | /s/ David S. Shevitz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                      **F 9013-3.1.PROOF.SERVICE**

## ADDITIONAL SERVICE INFORMATION

**SECTION I – EMAIL SERVICE**

**Brian L. Davidoff  (proposed counsel for Debtor)    bdavidoff@greenbergglusker.com,
calendar@greenbergglusker.com;jking@greenbergglusker.com;cmillerwatkins@greenbergglusker.com;
MilanaECF@ggfirm.com**
**Alan J Friedman     afriedman@shulmanbastian.com, lgauthier@shulmanbastian.com**
**Steven Phillip Ordaz     sordaz@bmcgroup.com, tfeil@bmcgroup.com**
**David Samuel Shevitz     David.S.Shevitz@usdoj.gov**
**United States Trustee (LA)     ustpregion16.la.ecf@usdoj.go**

**SECTION II – U.S. MAIL SERVICE**

**Debtor**
Rosland Capital LLC
11766 Wilshire
Suite 1200
Los Angeles, CA 90025-6557

**Judge**
Honorable Sheri Bluebond
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.